UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

OLIVIA RUX, et al.,                  :      Civil Action No.
                                     :      1:08-cv-06588 (AKH)
        Petitioners,         :      (USDC E.D. Va. No. 2:04cv428)
                                     :
   -v-                               :
                                     :      **RESPONSE OF**
ABN-AMRO BANK, N.V., AMERICAN        :      **FEDERAL RESERVE**
EXPRESS BANK, LTD., BANK OF          :      **BANK OF NEW YORK**
NEW YORK, BANK OF CHINA,             :      **TO PETITION FOR TURNOVER**
CITIBANK, N.A., DEUTSCHE BANK,       :
A.G., HSBC BANK USA, N.A., JP        :
MORGAN CHASE BANK, N.A., BANK        :
OF AMERICA, and FEDERAL RESERVE      :
BANK OF NEW YORK,                    :
                                     :
        Respondents.         :

------------------------------------------------------x

## I.    <u>Introduction</u>

      The Federal Reserve Bank of New York ("New York Fed") respectfully submits

this Response to Petitioners' Petition for Turnover.  The New York Fed takes no position

on the merits of the Petition and leaves any arguments on the merits to the Bank of

Sudan, should it choose to appear in this action.  Moreover, the New York Fed declines

to challenge the statutory construction arguments raised by petitioners in their

Memorandum in Support of Petition for Turnover.  However, because resolution of the

statutory construction issue in this case directly impacts on the sovereign immunity

afforded foreign central banks holding reserves in the United States, the New York Fed

submits this Response in order to assist the Court in understanding the rationale behind,

and the importance of, this broad immunity.

## II.    <u>The Federal Reserve Bank of New York and Central Bank Immunity</u>

      The New York Fed is one of twelve regional Federal Reserve Banks, which,

together with the Board of Governors of the Federal Reserve System and the Federal

Open Market Committee, comprise the Federal Reserve System, the central bank of the United States. The New York Fed is charged with a number of unique responsibilities, such as acting as the international operating arm of the Federal Reserve System. In this capacity, the New York Fed, among other things, conducts foreign exchange operations in close and continuous consultation with the United States Department of the Treasury ("Treasury"); maintains accounts and holds reserves on behalf of itself and Treasury at foreign central banks; provides technical assistance to foreign central banks; and acts as fiscal agent of the United States government and many of its agencies and instrumentalities in conducting their international financial operations.

The New York Fed also offers banking and financial services to foreign entities, including central banks, governments, and international official institutions, such as the International Monetary Fund and the World Bank. In large part because of the safety and stability of the dollar and the financial, political and judicial systems of the United States, many countries maintain a significant part of their foreign exchange reserves in dollar-denominated assets, held mainly in central bank accounts at the New York Fed. These accounts are typically actively managed transactional accounts that are used for investment and to discharge central banks' payment obligations.

As one of the largest custodians in the world, if not the largest custodian, of foreign official reserves, the New York Fed has a substantial interest in a stable and certain legal environment for foreign central bank assets. As the largest depository of central bank reserves in the United States, the New York Fed is often the primary point of contact with other central banks and monetary authorities. These institutions look to the New York Fed for assurance that their accounts at the New York Fed are protected under

U.S. law.  The New York Fed also has an interest in protecting its reserves abroad by promoting international principles of sovereign immunity for central bank reserves.

Clear and certain central bank immunity in the United States enhances a predictable and resilient global financial and payments system, because of the prominent role the United States plays in the world economy.  Congress provided for legal certainty in this area when it enacted the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. § 1602 et seq.  Section 1611(b)(1) of the FSIA states that, absent explicit waiver in aid of execution, the property of a foreign central bank held for its own account is immune from attachment or execution.  Section 1611(b)(1) enables central banks to hold funds and conduct central banking business in the United States without worrying about whether their holdings will be subjected to discovery or, worse, restraint.

Central banks' continued investment of foreign official reserves in the United States maintains the preeminence of the dollar as a reserve currency.  This investment is an important component of what makes the United States, and New York in particular, one of the world's premier financial centers, augmenting this nation's ability to exercise leadership on the world stage.

Another significant benefit to the United States from foreign reserves is that they are most frequently invested in U.S. government securities.  In fact, foreign reserves account for about one-third of outstanding U.S. government securities.  This investment assists the United States in financing its public debt, because the greater demand resulting from foreign participation yields a lower interest rate on such debt.

Clear and certain central bank immunity in the United States enhances a predictable and resilient global financial and payments system, because of the prominent

role the United States plays in the world economy.  If such clarity and certainty were compromised, there is the potential for disruptive effects on the international financial system.

III.   **The Petition**

Petitioners in the instant case represent the estates of 17 American sailors who died in the October 12, 2000 terrorist attack on the U.S.S. Cole in Yemen.  They have obtained a judgment in the United States District Court for the Eastern District of Virginia against the Republic of Sudan in the amount of $12,275,860.00.  In an effort to enforce this judgment, petitioners have brought turnover proceedings pursuant to the Terrorism Risk Insurance Act, 28 U.S.C. § 1610 ("TRIA"), against nine commercial banks and the New York Fed ("Respondent Banks").

The New York Fed has on its books an account for the Bank of Sudan, acting in its capacity as a Central Bank.[1]  The account is held by the New York Fed pursuant to Section 14 of the Federal Reserve Act, 12 U.S.C. § 358, and is currently on restricted status in compliance with sanctions regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury.[2]  On information and belief, the New York Fed is the only Respondent Bank that has on its books an account in the name of Bank of Sudan.

The FSIA was enacted in 1976, and contains a comprehensive set of principles governing claims of sovereign immunity by a foreign state and its instrumentalities.  Petitioners rely on Section 201 of the TRIA, which is appended to Section 1610 of the

---

[1] The current balance in the account is approximately $2.1 million.

[2] If the Court were to deny the Petition for Turnover, the account would remain on restricted status and the funds would continue to be blocked.

FSIA.  Section 201 was enacted by Congress to assist the victims of state sponsors of

terrorism and provides:

> *Notwithstanding any other provision of law* . . . in every
> case in which a person has obtained a judgment against
> a terrorist party on a claim based upon an act of
> terrorism, or for which a terrorist party is not immune
> under section 1605(a)(7) of title 28, United States Code,
> the blocked assets of that terrorist party (including the
> blocked assets of any agency or instrumentality of that
> terrorist party) shall be subject to execution or
> attachment in aid of execution in order to satisfy such
> judgment to the extent of any compensatory damages
> for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note (emphasis added).

The language of Section 1611(b)(1) of the FSIA, when compared with the

language of Section 201 of the TRIA, gives rise to what can perhaps best be described as

a conflict of the "notwithstandings".  Section 1611(b)(1) provides:

> *Notwithstanding the provisions of section 1610* of this chapter, the
> property of a foreign state shall be immune from attachment and from
> execution, if – the property is that of a foreign central bank or monetary
> authority held for its own account, unless such bank or authority, or its
> parent foreign government, has explicitly waived its immunity from
> attachment in aid of execution, or from execution....

28 U.S.C. § 1611(b)(1) (emphasis added).

In *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006), Judge Marrero

briefly addressed this conflict and held that Section 201 of the TRIA, "which was enacted

later in time than § 1611, overrides the immunity conferred in § 1611." *Id.* at 499.  Judge

Marrero did not, however, address the unique and important nature of the central bank

immunity conferred by Section 1611.

When it enacted Section 1611 of the FSIA, Congress was concerned that if

foreign central bank property in the United States were left vulnerable to attachment and

execution, deposits in foreign central bank accounts in the United States would be discouraged. According to the House Report on the FSIA:

> If execution could be levied on such f[u]nds without an explicit waiver, deposit of foreign funds in the United States might be discouraged. Moreover, execution against the reserves of foreign states could cause significant foreign relations problems.

H.R. Rep. No. 94-1487, at 31 (1976), as reprinted in 1976 U.S.C.C.A.N. 6604, 6630.

Foreign central bank accounts play an important role with respect to investment of foreign exchange reserves and the global payments system. Congress thus granted foreign central banks and monetary authorities their own broad protection under Section 1611(b)(1) in order to provide legal certainty and security to central banks holding assets in the United States. This legal certainty helped to ensure that foreign official reserves would continue to be held in the United States.

Congress recognized that a Central Bank's investment of its national reserves in the United States needed special consideration. The New York Fed respectfully suggests that a decision to allow execution against a central bank's reserves is a significant one. Section 1611(b)(1) must be interpreted carefully to preserve the important protections that Congress conferred on foreign central bank assets.

Dated:     New York, New York
           September 15, 2008

                            Respectfully submitted,

                            Thomas C. Baxter, Jr.
                            General Counsel and
                            Executive Vice President
                            FEDERAL RESERVE BANK
                               OF NEW YORK


              By:    Shari D. Leventhal (sdl-2280)
                     Assistant General Counsel and
                     Senior Vice President
                     Federal Reserve Bank
                        of New York
                     33 Liberty Street
                     New York, New York 10045
                     (212) 720-5018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
OLIVIA RUX, et al.,                          :        Civil Action No.
                                             :        1:08-cv-06588 (AKH)
                  Petitioners,               :        (USDC E.D. Va. No. 2:04cv428)
        -v-                                  :
                                             :
ABN-AMRO BANK, N.V., AMERICAN                :
EXPRESS BANK, LTD., BANK OF                  :
NEW YORK, BANK OF CHINA,                     :
CITIBANK, N.A., DEUTSCHE BANK,               :
A.G., HSBC BANK USA, N.A., JP                :
MORGAN CHASE BANK, N.A., BANK                :
OF AMERICA, and FEDERAL RESERVE              :
BANK OF NEW YORK,                            :
                                             :
                  Respondents.               :
-----------------------------------------------------x

## CERTIFICATE OF SERVICE

I, Kristin Sturm, hereby certify that on the 15th day of September, 2008, I caused a

hard copy of the Response of Federal Reserve Bank of New York to Petitition for

Turnover, to be delivered to:

Republic of Sudan
c/o Embassy of the Republic of Sudan
2210 Massachusetts. Avenue
Washington, D.C. 20008 (via Federal Express)

Republic of Sudan
c/o UN Mission of the Republic of Sudan
305 East 47th Street, 4111 Fl.
New York, NY 10017 (via Federal Express)

Andrew C. Hall
Hall, Lamb & Hall, P.A.
2665 South Bayshore Drive
Miami, FL 33131-9113 (via Federal Express)

Jerome Walker
Troutman Sanders LLP (NYC)
405 Lexington Avenue

New York, N.Y. 10174 (via Federal Express)


Dated: September 15, 2008
        New York, New York

Kristin Sturm
Paralegal
Federal Reserve Bank of New York
33 Liberty Street,
New York, NY 10045
Phone: 212-720-7439
Fax: 212-720-8709

2