UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVIA RUX, et. al.,

                    Petitioners,

     -against-

ABN AMRO BANK, N.V., et al.,

                 Respondents.

Case No. : 08 Civ. 6588 (AKH)

**WRITTEN OBJECTIONS OF
ETHIOPIAN COMMERCIAL
BANK AND ETHIOPIAN
PETROLEUM ENTERPRISE**

---

The Commercial Bank of Ethiopia ("CBE") and the Ethiopian Petroleum Enterprise ("EPE") hereby submit these written objections pursuant to the Notice of Lawsuit of September 15, 2008, in the above-captioned matter in order to assert their claims to a US$2,538,939.33 wire-transfer payment that was frozen in a deposit account with HSBC Bank USA, N.A. ("HSBC") and that Petitioners in this matter seek to use to satisfy a judgment against Sudan. These funds are identified in the spreadsheet entry that accompanied the Notice of Lawsuit of September 15, 2008, and that has been reproduced as Exhibit 1 hereto.

As set forth in more detail below, (1) Petitioners may not compel payment of wire-transfer funds from HSBC as an intermediary bank and (2) the funds at issue here are neither owned by nor owed to Sudan or any Sudanese entity. For these reasons, CBE and EPE respectfully request that the Court dismiss Petitioner's Petition to Compel Respondents to Pay Money to Judgment Creditors from Judgment Debtor's Bank Accounts and Assets with respect to these funds, release these funds to HSBC from the Court's registry, and order Petitioners not to serve any further creditor process on HSBC or any other entity with respect to these funds.

A.    **Background**

In October 2006, EPE purchased 5,748,889 tons (7,861,000 liters) of gasoline from the Sudanese Petroleum Corporation ("SPC") for US$2,538,939.25.    (Declaration of Tsegay Gebremichael Decl. ¶ 2 (Nov. 14, 2008) (Ex. 2) (hereinafter "Tsegay Decl.").)  On December 1, 2006, EPE instructed CBE to initiate a wire transfer to pay for this transaction.  (*Id.*)  CBE used a debit account at HSBC Bank PLC in Johannesburg, South Africa.  (Tsegay Decl. ¶ 3, Attach. 2.) SPC's bank was BNP Paribas (Suisse) S.A. in Switzerland.  (Ex. 1.)  Because the purchase was denominated in dollars, the wire transfer needed to pass through the U.S. correspondent banks of HSBC and BNP Paribas, respectively, before reaching its destination in Switzerland.  (Ex. 1.) When the wire transfer passed from CBE's debit account in Johannesburg through its correspondent bank, HSBC Bank USA, N.A. in New York, the funds were immediately frozen pursuant to directives issued by the U.S. Department of Treasury.  (Tsegay Decl. ¶ 3, Attach. 2; Ex. 1.)  CBE and EPE understand that these funds have now been transferred from the HSBC account to the Court's registry pursuant to this Court's Order Regulating Proceedings of July 29, 2008, for payment to Petitioners subject to the assertion of any third-party claims, *i.e.*, the claims now being asserted by CBE and EPE.

After the funds were frozen in the United States, SPC required EPE to make payment for the gasoline purchased in October 2006 and indicated that it would halt fuel shipments to Ethiopia if payment was not made.  (Tsegay Decl. ¶ 4.)  In order to maintain Ethiopia's fuel supply, EPE made payment to SPC through a bank in Europe in February 2008 for the delivered gasoline.  As discussed below, because Sudan has received payment for the gasoline, it has no claim to the frozen funds.  The funds belong to EPE and, when they are unfrozen, must be released from HSBC to CBE for transfer back to EPE.

**B.**     **The New York Uniform Commercial Code Protects These Funds from Petitioners'**
**Service of Creditor Process**

Article 4-A of the New York Uniform Commercial Code ("N.Y. U.C.C.") applies to funds transfers passing through New York.  The N.Y. U.C.C. expressly prohibits Petitioners from serving creditor process on HSBC with respect to EPE's frozen funds because HSBC is an intermediary bank in this transaction.  N.Y. U.C.C. § 4-A-502(4) provides that "[c]reditor process with respect to a payment by the originator to the beneficiary pursuant to a funds transfer may be served only on the beneficiary's bank with respect to the debt owed by that bank to the beneficiary.  Any other bank served with the creditor process is not obliged to act with respect to the process."  Petitioners have served HSBC with creditor process[1] with respect to the wire-transfer funds at issue here, but HSBC is an intermediary sending bank in the funds transfer, not the beneficiary's bank.  (Ex. 1.)  Accordingly, Petitioners are prohibited by § 4-A-502(4) from attempting to compel HSBC to pay them the funds wired by EPE.

Moreover, § 4-A-503 of the N.Y. U.C.C. restricts the ability of courts to act with respect to funds transfers.  Section 4-A-503 provides that

> [f]or proper cause and in compliance with applicable law, a court may restrain (i) a person from issuing a payment order to initiate a funds transfer, (ii) an originator's bank from executing the payment order of the originator, or (iii) the beneficiary's bank from releasing funds to the beneficiary or the beneficiary from withdrawing the funds. A court may not otherwise restrain a person from issuing a payment order, paying or receiving payment of a payment order, or otherwise acting with respect to a funds transfer. (Emphasis added.)

Thus, § 4-A-503 precludes a court from acting with respect to this stage of the funds transfer at issue here because HSBC is not the originator, the originator's bank, or the beneficiary's bank. (Ex. 1.)

---

[1] N.Y. U.C.C. § 4-A-502(1) defines "creditor process" as "levy, attachment, garnishment, notice of lien, sequestration, or similar process issued by or on behalf of a creditor or other claimant with respect to an account."

Because §§ 4-A-502 and 503 protect the funds at issue from interference from creditor process or court restraint, CBE and EPE respectfully request that the Court dismiss, on these grounds, Petitioner's Petition to Compel Respondents to Pay Money to Judgment Creditors from Judgment Debtor's Bank Accounts and Assets with respect to these funds, release these funds to HSBC, and order Petitioners not to serve any further creditor process on HSBC with respect to these funds.

**C.    The Funds Belong to the Ethiopian Petroleum Enterprise:   They Are Neither Owned By Nor Owed To the Sudanese Petroleum Corporation**

Even if the funds were not protected from interference by the Petitioners on the basis of §§ 4-A-502 and 503 as set forth above, the funds are not owned by or owed to SPC or any other Sudanese entity.   Rather, the funds belong to EPE and cannot be used to satisfy a judgment against Sudan.

**1.    The Funds Are Not Owned by the Sudanese Petroleum Corporation**

The N.Y. U.C.C. makes clear that SPC does not own the funds.   N.Y. U.C.C. § 4-A-406(1) provides that payment is not made from an originator to a beneficiary until a payment order is "accepted" by the beneficiary's bank.   Thus, "until the funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, <u>the beneficiary has no property interest in the funds transfer</u>. . . ."   (Official Comment, U.C.C. § 502(4) (emphasis added).)

With respect to the funds transfer at issue here, payment by EPE to SPC would not have been made until a payment order was accepted by BNP Paribas, SPC's beneficiary bank.   (Ex. 1.)   To have accepted a payment order, BNP Paribas would have had to either (1) pay SPC (or notify SPC that the payment order had been received), or (2) receive payment of the funds by "final settlement" or by a crediting of its account by HSBC.   (N.Y. U.C.C. § 4-A-209(2)(a); *see*

*also United States v. BCCI Holdings (Lux.)*, 980 F. Supp. 507, 513-14 (D.D.C. 1997); *Sheerbonnet, Ltd. v. American Express Bank, Ltd.*, 951 F. Supp. 403, 406-07 (S.D.N.Y. 1995).) Neither criterion has been satisfied because the funds were frozen at HSBC. Accordingly, payment has not been made to SPC, and it has no property interest in the funds.

Another reason why payment was never made to SPC is that the payment order from CBE to HSBC was canceled by operation of law five days after the funds were frozen at HSBC. Under N.Y. U.C.C. §§ 4-A-209(1) and 4-A-301(1), an intermediary bank like HSBC is deemed to have accepted a payment order when the intermediary bank itself issues to the next bank in the chain a payment order intended to carry out the sender's order. This never occurred because the funds at issue were "immediately frozen" upon their arrival at HSBC in New York. (Tsegay Decl. Attach. 2.) Therefore, the payment order received by HSBC was an unaccepted payment order, and "[a]n unaccepted payment order is cancelled by operation of law at the close of the fifth funds-transfer business day of the receiving bank after the execution date or payment date of the order." (N.Y. U.C.C. §§ 4-A-211(4).) Once cancelled, a payment order cannot be accepted. (N.Y. U.C.C. §§ 4-A-211(5).) Thus, the unaccepted payment order from CBE to HSBC was cancelled by operation of law, and payment was never made to SPC.[2]

For all these reasons, the funds are not assets that belong to SPC – or any Sudanese entity – that can be used to satisfy a judgment against Sudan.

### 2.    The Funds Are Not Owed To the Sudanese Petroleum Corporation

Not only are the funds not owned by SPC, they are not owed to SPC either. As noted above, after the funds were frozen in the United States, SPC indicated that it would halt fuel

---

[2] Notwithstanding the cancellation of an unaccepted payment order by operation of law, the sender may unilaterally cancel a payment order under N.Y. U.C.C. § 4-A-211(b) within a reasonable time before a receiving bank accepts the order. Once the receiving bank accepts the order, cancellation is still possible under N.Y. U.C.C. § 4-A-211(c)(1) with the agreement of the receiving bank or if a funds transfer rule provides otherwise.

shipments to Ethiopia unless EPE made payment for the fuel.  (Tsegay Decl. ¶ 4.)  In order to maintain Ethiopia's fuel supply, EPE made payment to SPC through a bank in Europe in February 2008 for the delivered gasoline.  (*Id.* Attach. 3.)  Accordingly, SPC has no claim to the funds that are frozen because EPE has paid for the gasoline separately.  The funds belong to EPE and, when they are unfrozen, must be released from HSBC to CBE for transfer back to EPE.

**D.  The Government of Ethiopia Is Working With the U.S. Government To Obtain a License That Would Permit the Funds To Be Returned to Ethiopia**

The use of the frozen funds, which belong to EPE, to satisfy a judgment against Sudan is a matter of grave concern for the Government of Ethiopia.  (Declaration of Minelik Alemu ¶ 3 (Nov. 14, 2008) (Ex. 3).)  Efforts are being made at the diplomatic level to have the funds unfrozen by the U.S. Government and returned to EPE, the rightful owner of the funds.  (*Id.*)  Ethiopia is taking steps to obtain a license from the Office of Foreign Assets Control in the U.S. Treasury Department that would permit HSBC to release the funds to EPE.  (*Id.*)  The Government of Ethiopia respectfully submits that release of the funds to EPE is the only just and satisfactory outcome in this situation and that the use of EPE's funds to satisfy a judgment against Sudan would undoubtedly be a miscarriage of justice and would not be compatible with the excellent diplomatic relations between the United States and Ethiopia.  (*Id.*)

**E.  Conclusion**

For the foregoing reasons, CBE and EPE respectfully request that the Court dismiss Petitioner's Petition to Compel Respondents to Pay Money to Judgment Creditors from Judgment Debtor's Bank Accounts and Assets with respect to these funds, release these funds to HSBC, and order Petitioners not to serve any further creditor process on HSBC or any other entity with respect to these funds.

Dated:  New York, New York
        November 14, 2008

DEWEY & LEBOEUF LLP

By:_____
      Paul H. Cohen
      1301 Avenue of the Americas
      New York, NY 10019-6092
      Tel:  (212) 259-8000
      Fax:  (212) 259-6333

      Attorney for CBE and EPE

# Exhibit 1

The Notice of Lawsuit and other papers enclosed herewith pertain to the following wire transfer in which you may have an interest.

| Date | Amount | Originator | Originating Bank | HSBC Debit Account | Sending Bank | Receiving Bank | Beneficiary Bank | Beneficiary |
|---|---|---|---|---|---|---|---|---|
| 12/6/06 | 2,538,938.33 | Ethiopian Petroleum Enterprise Addis Ababa, Ethiopia | Commercial Bank of Ethiopia Addis Ababa, Ethiopia | HSBC Bank plc (AUH) Johannesburg Branch<br><br>Sender's Reference: TT 30H614462MNY | | BNP Paribas New York New York, NY | BNP Paribas (Suisse) SA Switzerland | Sudanese Petroleum Corporation<br><br>A/C 723421K<br><br>Originator to Beneficiary Information: INV/me/10/2006 dated Nov 05/06 |

FFP0
Doc # 01-22473451

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLIVIA RUX, et. al.,

           Petitioners,

    -against-

ABN AMRO BANK, N.V., et al.,

           Respondents.

Case No. : 08 Civ. 6588 (AKH)

**DECLARATION OF
TSEGAY GEBREMICHAEL**

TSEGAY GEBREMICHAEL declares pursuant to 28 U.S.C. § 1746:

1.    My name is Tsegay Gebremichael.   I am the Finance Manager of the Ethiopian Petroleum Enterprise ("EPE").

2.    In October 2006, EPE purchased 5,748,889 tons (7,861,000 liters) of gasoline from the Sudanese Petroleum Corporation ("SPC") for US$2,538,939.25.  On December 1, 2006, EPE instructed the Commercial Bank of Ethiopia ("CBE") to initiate a wire transfer to pay for this transaction.  A copy of the payment instructions that EPE submitted to CBE and the credit note we received from CBE informing EPE that the transfer had been initiated is attached to my declaration as Attachment 1.

3.    The wire transfer initiated by CBE was made from a debit account at the HSBC Bank PLC in Johannesburg, South Africa, and passed to HSBC Bank U.S.A., N.A. in New York where the funds were immediately frozen pursuant to directives issued by the U.S. Department of Treasury.  A letter from HSBC Bank PLC in Johannesburg stating that the funds were frozen is attached to my declaration as Attachment 2.

4.    After the funds were frozen in the United States, SPC required EPE to make payment for the fuel.  SPC indicated that it would halt fuel shipments to Ethiopia if payment was not made.



In order to maintain Ethiopia's fuel supply, EPE made payment to SPC through a European bank in February 2008 for the delivered gasoline.  Copies of (1) the payment instructions that EPE submitted to CBE for the second payment, (2) the credit note EPE received from CBE informing EPE that the transfer had been effected for this second payment, and (3) an acknowledgement that this second payment was processed is attached to my declaration as Attachment 3.

5.       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Addis Ababa, Ethiopia, on November 14, 2008.

Tsegay Gebremichael

የማ. ግ/ ሚካኤል
የፋይናንስ ሥራ አስኪያጅ
TSEGAI G. MICHAEL
FINANCE MANAGER

# Attachment 1

*First payment order*

01 DEC
1051 16.c

01 DEC 2006

*International Banking Division*
*Commercial Bank of Ethiopia*
*Addis Ababa.*

Dear Sirs,

Would you please pay a net sum of *USD 2,538,939.33 (US Dollars Two million five hundred thirty eight thousand nine hundred thirty nine and 33/100)* only by Telegraphic transfer infavour of Sudanese Petroleum Corporation to:-

> BNP PARIBAS (SUISSE) SA Geneva
> Swift        :- BPPBCHGG
> Account No. :- 72482/1K
> IBAN        :- CH 91 0868 6001 0724 7200 1

Please, include in your remittance detail of the following information.

> Customer Name: Ethiopian Petroleum Enterprise
> Invoice No.:-     M/10/2006, dated November 05/2006

The above payment represents cost of *5,748.889 M/Tons Motor Gasoline* delivered during the month of *Oct./2006*, under Invoice No. *M/10/2006, dated October 05/2006,* and payment due date *Dec., 01/2006.*

You are hereby authorized to debit the above payment and related charges to our C/A No. 01338-185010-00 with your Addis Ababa Branch.

Yours faithfully,

YIGZAW MEKONNEN
General Manager

Demelash Alemu
Head General Accounts Division

/tf_

1/5

Final panucial   Creative and

# COMMERCIAL BANK OF ETHIOPIA          *154*
IBD/OFP                                    Branch _____   Date 04.12.06

| | | | | CONDITIONS OF THE TRANSFER | | Exchange Control Permit No. |
|---|---|---|---|---|---|---|
| Code | T. T. No. | NBE Code | | Value/Date | | |
| 000 | 163638 | | Funds are accepted on this transfer... | | CBE/IBD/01/4316/06 | |
| | Corresp. A/C No. | | | | | Customer's A/C No. |

| REMITTED TO | | MAIL TO | 0133818501000 |
|---|---|---|---|
| HSBC S.A | | ETHIOPIAN PETROLEUM ENTERPRISE | |
| JOHANNESBURG | | | |

/724821K
BEN:SUDANESE PETROLEUM CORPORATION
IK:BNP PARIBAS (SUISSE) SA GENEVA
SWIFT CODE:BPPBCHGG
IBAN:CH9108686001072472001

| | | FOREIGN CY | RATE | LOCAL CY |
|---|---|---|---|---|
| Amount of Transfer | | USD2,538,939.33 | 8.8809 | 22,548,066.30 |
| | Exchange Payable to NBE | | | 338,220.99 |
| | Service Charge | | | 225,480.66 |
| | Cable Charge | | | 23.- |
| | Correspondent Charge | | | |
| Amount in Figure TXT | TOTAL | | | 23,111,790.95 |

Authorized Signature

504        According to your instructions we have effected this cable transfer subject to conditions outlined on reverse side.

B-1094                                    B-163

2/5

# Attachment 2



Ato Bertukan G/Egzi
Director Foreign Banking Department
Commercial Bank of Ethiopia
Addis Ababa
Ethiopia

19 December 2006

Fax 251-11-517822

Dear Sir,

We received an instruction from Commercial Bank of Ethiopia (CBE) to effect payment of USD2,538,939.33 for value 06 December 2006 in favour of Sudanese Petroleum Corporation's account with BNP Paribas in Switzerland.

The payment was effected in accordance with CBE's instruction and a telegraphic transfer was released to HSBC USA for further payment to BNP Paribas.

Once funds reached HSBC USA they were immediately frozen as per the Directive from the US Department of Treasury, based on the existing Sanctions against Sudan. The funds are now held by HCBC USA, who are obligated by the Office of Foreign Assets Control (OFAC) to block this payment and place funds on a deposit account.

HSBC Johannesburg is required to independently apply for the release of these monies from OFAC within the US Department of Treasury. The aforementioned application has been lodged and we are now awaiting the outcome.

Commercial Bank of Ethiopia will be notified upon receipt of their response.

Yours sincerely,

Carmel Kisten
Relationship Manager

Gimhani Taiwatte
Manager, Global Transactional Banking Operations

HSBC Bank plc – Johannesburg Branch
2 Exchange Square, 85 Maude Street, Sandown, Sandton, 2196
Private Bag X785434, Sandton, 2146, South Africa
Tel: 011-676 4200  Fax: 011-783 9119

HSBC Bank plc is incorporated in the United Kingdom, registration number 14259. Johannesburg Branch registration number 2003/004613/10.
An Authorised Financial Services Provider.

Board of Directors: S K Green (Chairman)*, D C Budd*, C Filippi^, J D Fishburn*, M F Geoghegan*, D D J John*,
C M S Jones*, R E S Martin*, A R D Monro-Davies*, J F Trueman*, P M Shawyer*, J Singh*, JH McKenzie (Company Secretary)*
Branch Management: K Patel (Chief Executive Officer)*
* British, ^ French

# Attachment 3

*Second payment order*

08 FEB 2008
1416 6·9/2000

**International Bank Division**
**Commercial Bank of Ethiopia**
**Addis Ababa**

Dear Sirs,

This has reference to USD 2,538,939.33 *(US Dollars Two million five hundred thirty eight thousand nine hundred thirty nine and 33/100)* transferred to Sundance Petroleum Corporation Vide TT No. 183536 dated December 04/2006, blocked by US Treasury Department.

Till the problem related to the blocked transfer resolved, you are kindly requested to pay a net sum of *USD 2,538,939.33 (Two million five hundred thirty eight thousand nine hundred thirty nine and 33/100)* in **Equivalent Euro** only by telegraphic transfer infavour of Sundance Petroleum Corporation to:-

> BHF Bank
> Frankfort, Germany
> Through: Omdurman National Bank
> Account No. :- BIC/739417
> For Further Credit to Sudanese Petroleum Corporation
> Central Bank of Sudan
> Khartoum, Sudan.

Please, include in your remittance detail of the following information.

> Customer Name   : Ethiopian Petroleum Enterprise
> Invoice No        :  M/10/2007, dated Nov., 05/2006.

The above payment represents cost of *5,748.889 M.Tons of Motor Gasoline* delivered during the month of *October/2006* under Invoice Ref. No.*M/10/2007 dated November 05/2006.*

You are hereby authorized to debit the above payment and related charges to our C/A No. 01338-185010-00 with Addis Ababa Branch.

Yours Faithfully,

Demelash Alemu
የጠቅላላ ሂሳብ ዋና ክፍል ኃላፊ
Head General Accounts Division

YIGZAW MEKONNEN
ዋና ሥራ አስኪያጅ
General Manager

hf

Enc:- 2 pages

3/5

*Second payment Credit*

Foreign
ERS
DVICE

የ ኢ ት ዮ ጵ ያ ን ግ ድ ባ ን ክ ።

## COMMERCIAL BANK OF ETHIOPIA
IBD/OPP         Branch         Date    **11/02/08**

| ch Code | T. T. No. | NBE Code | Value Date | Exchange Control Permit No. 153536 |
|---|---|---|---|---|
| | № 213909 | | | CBE/IBD/01/4316/06 |

Corresp. A/C No.             Customer's A/C No. 0133818501000

D TO    20155380137703          MAIL TO

BHF BANK
FRANKFURT

ETHIOPIAN PETROLEUM ENTERPRISE

/739417

EN:SUDANESE PETROLEUM CORPORATION
ANK:OMDURMAN NATIONAL BANK
WIFT CODE:BSDNSDKH
HARTOUN,SUDAN

URPOSE:N/10/2007,DATED NOV05/2006

| | FOREIGN CY | RATE | LOCAL CY |
|---|---|---|---|
| Amount of Transfer | EUR1,750,376.68 | 13.7169 | 24,009,733.65 |
| Exchange Payable to NBE | | | |
| Service Charge | | | |
| Cable Charge | | | 23.— |
| Correspondent Charge | | | |
| TOTAL | | | 24,009,756.65 |

Authorized Signature

According to your instructions we have effected this cable transfer subject to conditions outlined on reverse side.

4/5

*Acknowledgment of second payment*

12/02/08-15:29:02                    MOFPD-1933-000001                         1

**Possible Duplicate Delivery**
        Network          : SWIFT
        Session Holder   : CBETETAAAXXXF
        Session          : 9583
        Sequence         : 380737
        Delivery Status : Network Ack
        --------------------- Instance Type and Transmission ---------------
Original Priority/Delivery        : Normal
        ------------------------- Message Header ------------------------
Swift Input                       : FIN 103 Single Customer Credit Transfer
Sender        : CBETETAAXXX
              COMMERCIAL BANK OF ETHIOPIA
              ADDIS ABEBA ET
Receiver      : BHFBDEFFXXX
              BHF-BANK AKTIENGESELLSCHAFT
              (HEAD OFFICE)
              FRANKFURT AM MAIN DE
        ------------------------- Message Text ------------------------
    20: Sender's Reference
        OFP/213903/08
   23B: Bank Operation Code
        CRED
   32A: Val Dte/Curr/Interbnk Settld Amt
        Date        : 12 February 2008
        Currency    : EUR (EURO)
        Amount      :              #1,750,376.08#
   50F: Ordering Customer - ID
        /CUST0133818501000
        1/ETHIOPIAN PETROLEUM ENTERPRISE
        2/UNITY SQUARE,CHURCHILL ROAD
        3/ET/ADDIS ABABA
   57A: Account With Institution - BIC
        /739417
        OMDBSDKH
        OMDURMAN NATIONAL BANK
        KHARTOUM  SD
   59A: Beneficiary Customer - BIC/BEI
        BSDNSDKH
        CENTRAL BANK OF SUDAN
        KHARTOUM  SD
    70: Remittance Information
        /INV/M/10/2007 DATED NOVEMBER
        //05/2006
   71A: Details of Charges
        OUR
    72: Sender to Receiver Information
        /ACC/FOR FURTHER CREDIT TO SUDANESE
        //PETROLEUM CORPORATION
*End of Message

5/5

# Exhibit 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OLIVIA RUX, et. al.,

                    Petitioners,

        -against-

ABN AMRO BANK, N.V., et al.,

                  Respondents.

---

Case No. : 08 Civ. 6588 (AKH)

**DECLARATION OF
MINELIK ALEMU**

---

MINELIK ALEMU declares pursuant to 28 U.S.C. § 1746:

1.    My name is Minelik Alemu.  I am the Acting Director General of the International Law and Consular Affairs General Directorate of the Ethiopian Ministry of Foreign Affairs.

2.    In December 2006, the U.S. Treasury Department froze US$2,538,939.25 that the Ethiopian Petroleum Enterprise ("EPE") had wired to the Sudanese Petroleum Corporation ("SPC") as payment for 5,748,889 tons (or 7,861,000 liters) of gasoline shipped to Ethiopia in October 2006.  Because the funds were frozen in the United States, Sudan subsequently demanded payment for the fuel, and EPE made payment in February 2008.

3.    The continued freeze of EPE's funds is a matter of grave concern for the Government of Ethiopia, a developing country with no petroleum production of its own.  Accordingly, efforts are being made at the diplomatic level to have the funds unfrozen by the U.S. Government and returned to EPE, the rightful owner of the funds.  Ethiopia is taking steps to obtain a license from the Office of Foreign Assets Control in the U.S. Treasury Department that would permit HSBC Bank USA, N.A. to release the funds to EPE.  Release of the funds to Ethiopia is the only just and satisfactory outcome in this situation.  The use of these funds, which belong to Ethiopia, to

satisfy a judgment against Sudan would undoubtedly be a miscarriage of justice and will not be compatible with the excellent diplomatic relations between the U.S and Ethiopia.

4.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Addis Ababa, Ethiopia, on November 14, 2008.

Minelik Alemu