UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

OLIVIA RUX *et al.*

                Petitioners,

    -against-

ABN-AMRO BANK N.V. *et al.*

                Respondents.           Case No. 08 Civ. 6588 (AKH)

---

DEUTSCHE BANK A.G. and DEUTSCHE BANK
TRUST COMPANY AMERICAS

                Respondents and Third-
                Party Petitioners,

    -against-

AL HADHA EXCHANGE *et al.*

                Third Party Respondents
                and Adverse Claimants.

-------------------------------------------------------------------------x

**THE RECEIVERS OF
SABENA SA'S CLAIM TO
BLOCKED FUNDS AND
OBJECTIONS TO
PETITION**

      Third Party Respondent the Receivers of Sabena SA, by counsel, hereby files its Claim to

Blocked Funds and Objections to the Petition to Compel Respondents to Pay Money to Judgment

Creditors from Judgment Debtor's Bank Accounts and Assets and states in support on

information and belief as follows:

      1.  Sabena SA ("Sabena"), which was also known as Sabena Belgian World Airlines, was

incorporated in Brussels, Belgium in 1923.  Sabena was the national airline of Belgium, and its

principal place of business was Brussels, Belgium.  Declaration of Ilse Van de Mierop ("Mierop

Dec.") ¶ 4 (attached hereto as Exhibit A and incorporated herein).

2.  By an Order issued on November 7, 2001, the Brussels Commercial Court in Belgium declared Sabena SA to be bankrupt and appointed five individuals as the Receivers of Sabena SA.  Among other things, the Receivers of Sabena SA have the right to collect amounts owed to Sabena SA.  Mierop Dec. ¶ 3 (Ex. A).

3.  In addition to providing scheduled and chartered domestic and international air transportation services, Sabena, through its "Sabena Technics" division, provided aircraft repair and maintenance services to other airlines and other companies and organizations.  Mierop Dec. ¶ 5 (Ex. A).

4.  On or about June 26, 1997, Sabena entered into Contract TC/BS/979059-26 with Sudan Airways Ltd. ("Sudan Airways") under which Sabena agreed to provide, and Sudan Airways agreed to pay for, certain technical services for a Sudan Airways A310-200 aircraft. Mierop Dec. ¶ 6 (Ex. A).

5.  On or about August 22, 1997, Sabena entered into Contract TC/BS/979060A with Sudan Airways under which Sabena agreed to provide, and Sudan Airways agreed to pay for, certain technical services for a Sudan Airways A300B4-600 aircraft.  Mierop Dec. ¶ 7 (Ex. A).

6.  On or about October 20, 1997, Sabena sent Invoice 3000012604 to Sudan Airways for US$197,500.00 for work to be performed under Contract TC/BS/979059-26 during November 1997.  Mierop Dec. ¶ 8 (Ex. A).

7.  On or about October 24, 1997, Sabena sent Invoice 3000012916 to Sudan Airways for US$163,000.00 for work to be performed under Contract TC/BS/979060A during November 1997.  Mierop Dec. ¶ 9 (Ex. A).

8.  Upon information and belief, on or about November 4, 1997, Sudan Airways originated a wire transfer for US$360,500.00 to Sabena to pay the foregoing invoices.  Upon

information and belief, for the wire transfer, the National Bank of Abu Dhabi was the originating

bank, Bankers Trust in New York, New York, was the intermediary bank, Generale Bank in

Brussels, Belgium was the beneficiary bank, and Sabena was the beneficiary.  Mierop Dec. ¶ 10

(Ex. A); Third Party Petition Seeking Relief in the Nature of Interpleader of Respondents and

Third Party Petitioners Deutsche Bank A.G. and Deutsche Bank Trust Company Americas,

Exhibit B thereto.

     9.  Upon information and belief, on or about November 4, 1997, Bankers Trust, the

intermediary bank for the wire transfer, located in New York, New York, blocked the wire

transfer to Sabena ("the Blocked Funds").  The Blocked Funds are a subject of this action.

Mierop Dec. ¶ 10 (Ex. A); Third Party Petition Seeking Relief in the Nature of Interpleader of

Respondents and Third Party Petitioners Deutsche Bank A.G. and Deutsche Bank Trust

Company Americas, Exhibit B thereto.

     10.  Sabena fully and correctly performed all the work described in Invoices 3000012604

and 3000012916, and Sabena has not been paid for any of such work.  Accordingly, Third Party

Respondent is entitled to receive the Blocked Funds as payment for such work and is the rightful

owner of such funds.  Mierop Dec. ¶ 11 (Ex. A).

     11.  After the deduction of any and all setoffs, credits and other just grounds of defense,

Sudan Airways owes Third Party Respondent the principal amount of US$360,500.00, and such

principal amount, plus all accrued interest, is justly due from Sudan Airways to Third Party

Respondent.  Third Party Respondent has not, directly or indirectly, received any part of the

amounts charged herein as due, nor has it received any security or satisfaction for which credit

has not already been given.  Mierop Dec. ¶ 13 (Ex. A).

12.  On or about October 5, 2001, Sabena filed a Verified Petition pursuant to Section 304 of the U.S. Bankruptcy Code with the U.S. Bankruptcy Court for the Southern District of New York, thereby commencing Case No. 01-B-15224 (ALG).  Mierop Dec. ¶ 14 (Ex. A).

13.  On February 27, 2002, the U.S. Bankruptcy Court in Case No. 01-B-15224 (ALG) issued a Permanent Injunction Order that, among other things (emphasis added):

> ORDERED, that all persons and entities are enjoined from:  (a) seizing, repossessing, attaching, transferring, relinquishing or disposing of any property of the Company in the United States, or the proceeds of such property, including, without limitation, airplanes and related property located at airports, air travel slots, gates and receivables from airline ticket sales to third parties; (b) commencing or continuing any action or legal proceeding (including, without limitation, arbitration, or any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), including by way of counterclaim, against the Company, or any property in the United States that is involved in the foreign proceeding, or any proceeds thereof; (c) enforcing any judicial, quasi-judicial, administrative or regulatory judgment, assessment or order or arbitration award against the Company, and commencing or continuing any act or action or other legal proceeding (including, without limitation, arbitration, or any judicial, quasi-judicial, administrative or regulatory action, proceeding or process whatsoever) or any counterclaim to create, perfect or enforce any lien, attachment, garnishment, setoff or other claim against the Company, or any property in the United States, or any proceeds thereof-, (d) drawing down any letter of credit established by, on behalf or at the request of, the Company in excess of amounts expressly authorized by the terms of the contract, other agreement or applicable law pursuant to which such letter of credit has been established; (e) withdrawing from, setting off against, or otherwise applying property that is the subject of any trust or escrow agreement or similar arrangement in which the Company has an interest in excess of amounts expressly authorized by the terms of the trust, escrow or similar arrangement or applicable law; and (f) taking any discovery from the Company; and it is further
>
> ORDERED, that all persons and entities in possession, custody or control of property of the Company in the United States, or the proceeds thereof, shall turn over and account for such property or its proceeds to the Petitioners [the Receivers of Sabena SA];

Mierop Dec. ¶ 15 (Ex. A).

14. Title to the Blocked Funds passed from Sudan Airways when the National Bank of Abu Dhabi, the originating bank, accepted Sudan Airways's payment order by executing it. *See* New York Uniform Commercial Code ("N.Y. U.C.C.") § 4-A-209(1). Thus, at the time the funds were blocked by Bankers Trust, the intermediary bank, Sudan Airways did not have title to them. Moreover, because the Blocked Funds were being held by the intermediary bank, N.Y. U.C.C. §§ 4-A-502(4) and 4-A-503 prohibit the Court from directing that the Blocked Funds be paid to Petitioners.

15. Like the instant action, *Bank of New York v. Nickel* also involved wire transfer funds blocked by an intermediary bank in New York pursuant to Office of Foreign Assets Control sanctions regulations. The court in that case ruled that the New York Uniform Commercial Code required that the blocked funds be paid to the beneficiary of the wire transfer, not to its creditors, reasoning as follows:

> It is beyond cavil that attachment will only lie against the property of the debtor, and that the right to attach the property "is only the same as the defendant's own interest in it." *Sidwell & Co., Inc. v. Kamchatimpex*, 166 Misc.2d 639, 644, 632 N.Y.S.2d 455, 459 (Sup. Ct. N.Y. Co. 1995).
>
> Property rights in the funds under attachment in this case are governed by the UCC. The motion court recognized that if the UCC applied to the transfers at issue, title to the funds passed from Genex in 1993. Such title passed when Midland Bank [the originating bank] accepted Genex's payment orders by executing them (*i.e.*, when Midland Bank sent payment orders to the Bank of New York [the intermediary bank]). *See* UCC §§ 4-A-502(4) (process can be served only on beneficiary's bank, not on intermediary bank) and 4-A-503 (court cannot restrain intermediary bank from completing funds transfer); *see also Weston Compagnie De Finance Et D'Investissement S.A. v. La Republica Del Ecuador*, 1993 WL 267282, at *4 (S.D.N.Y. July

14, 1993) (funds transfer that is "in motion" cannot be attached at intermediary bank).

* * *

The federal law mandated that certain "interests" in property be blocked or frozen without regard to concepts of actual title to property as defined by state law. The applicable regulation, 31 C.F.R. § 585.201(b), provided:

> [N]o property or interest in property of any commercial, industrial, or public utility undertakings or entities organized or located in the Federal Republic of Yugoslavia (Serbia and Montenegro) ... that hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons ... may be transferred, paid, exported, withdrawn or otherwise dealt in.

This regulation authorized OFAC to block "property" or any "interest in" property regardless of who had actual title. When promulgating its regulations, and defining interests in property, OFAC did not apply the UCC and was not limited by concepts of title under state law. *See e.g., D.C. Precision, Inc. v. United States*, 73 F.Supp.2d 338, 344-345 (S.D.N.Y. 1999). Rather, OFAC "may choose and apply its own definition of property interests, subject to deferential judicial review." *Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 701 (D.C. Cir. 1994).

OFAC defined "property" very broadly to include "debts, indebtedness [and] obligations." 31 C.F.R. § 585.304. OFAC defined an "interest" in property equally expansively, to include "an interest of any nature whatsoever, direct or indirect." 31 C.F.R. § 585.303. The terms "interest" and "title" are clearly not synonymous. Thus, OFAC blocked assets based on interests in property and the use to which such property was put, not based on who owned the property in question. *See e.g. Global Relief Foundation, Inc. v. O'Neill*, 315 F.3d 748, 753 (7th Cir. 2002) *cert. denied* 540 U.S. 1003, 124 S.Ct. 531, 157 L.Ed.2d 408 (2003) ("The function of the IEEPA strongly suggests that beneficial rather than legal interests matter.... Thus the focus must be on how assets could be controlled and used, not on bare legal ownership."); *accord Holy Land Foundation for Relief and Development v. Ashcroft*, 333 F.3d 156, 162-163 (D.C. Cir. 2003) (Same).

In the instant case, Norilsk correctly asserts that the OFAC regulations focused on Genex's "interest" in property and on how the funds would be used, not on the passage of title to the funds pursuant to the UCC. The OFAC regulations sought to prevent the use or movement of money in any way that would confer a benefit upon any national of Serbia. Here, Genex, a national of Serbia, sought to use the funds by transferring them to discharge a debt that Genex owed to Norilsk. Thus, Genex had an "interest" in the funds, *viz:* using the funds to discharge a debt. OFAC had the power to block such an interest by preventing the movement of the funds–and to do so notwithstanding the passage of title pursuant to the UCC.

It is clear that, under the UCC, title to the funds in question passed from Genex to Midland Bank in 1993, but federal law operated to prevent the movement of the funds from 1993 until 2003. When the hostilities in Yugoslavia ended, and the federal government had no further reason to block Genex's use of the funds, federal law unblocked the funds. <u>The UCC then required that the funds be transferred to the rightful owner, Norilsk</u>. Thus, federal and state law did not conflict at all; they simply addressed different issues.

789 N.Y.S.2d 95, 99-101 (N.Y.A.D. 1 Dept. 2004) (emphasis added); *accord, Palestine*

*Monetary Authority v. Strachman*, 837 N.Y.S.2d 828, 838 (N.Y. Sup. 2007) ("As explained in

the Official Comment to § 4-A-502(4), a creditor is limited in the funds he can reach. In fact,

UCC § 4-A-503 expressly prohibits levy on funds in an intermediary bank 'to prevent

interruption of a funds transfer after it has been set in motion.' Official Comment, § 4-A-503. . .

. In the instant case, the facts show that the restraint was issued to BONY, an intermediary bank.

BONY was neither the originator's bank nor the beneficiary's bank. Indeed, PMA had no

account at BONY. When the funds were restrained, title to the funds had passed from PMA, and

they were not subject to restraint. *See* UCC §§ 4-A-209(1), 4-A-503. . . . Thus, PMA is correct

in arguing that UCC 4A prohibits this Court from restraining PMA funds held by BONY.").

16. Like the creditors in *Nickel*, Petitioners in the instant action lack a valid claim to the

Blocked Funds because (a) title to such funds passed from Sudan Airways before they were

blocked, which means that the Blocked Funds are not the property of Sudan Airways, the

Republic of Sudan or any agency or instrumentality of Sudan, and (b) such funds are beyond the

Court's restraining authority because they are held by the intermediary bank (or were held by

such bank until they were transferred into the Registry of the Court).  The Court should direct

that the Blocked Funds be paid to Third Party Respondent, their rightful owner, pursuant to the

New York Uniform Commercial Code and the U.S. Bankruptcy Court's Permanent Injunction

Order.

   WHEREFORE, the Third Party Respondent the Receivers of Sabena SA requests that the

Court (a) permit it to intervene in this action and become a party to this action for all purposes,

(b) grant it leave to conduct discovery in this action, (c) grant its Claim to the Blocked Funds and

order that such funds, plus all accrued interest, be paid to it, (d) sustain its Objections to the

Petition to Compel Respondents to Pay Money to Judgment Creditors from Judgment Debtor's

Bank Accounts, and (e) grant such other legal or equitable relief as it deems proper.

Dated: New York, New York
   November 21, 2008

         FREEHILL HOGAN AND MAHAR, LLP

         By: _____
         Patrick J. Bonner

         80 Pine Street
         New York, New York  10005
         (212) 425-1900
         (212) 425-1901 fax
         N.Y. Bar No. 1316132

         *Attorneys for Third Party Respondent*
         *the Receivers of Sabena SA*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November, 2008, I served the foregoing the Receivers of Sabena SA's Claim to Blocked Funds and Objections to Petition on all parties to this action by filing it electronically in accordance with the Court's CM/ECF requirements and procedures.

Patrick J. Bonner