>the TRIA. However, this Court need not reach that issue because the question whether and under what circumstances plaintiffs are entitled to execute against the Iraqi accounts is governed not by the provisions of the Vienna Convention or the FSIA, but by the TRIA.

Id. (emphasis added; citations omitted). The Court based its opinion on the specific language of the TRIA which provides "'[n]otwithstanding any other provision of law', the blocked assets of a terrorist party 'shall be subject to execution or attachment in aid of execution.'" Id. That phrase "unambiguously and effectively supersedes all previous laws." Id., citing Energy Transp. Group, Inc. v. Skinner, 752 F.Supp. 1, 10 (D.D.C. 1990). The Court held:

>**Accordingly, by its plain terms, the TRIA overrides any immunity from execution that blocked Iraqi property might otherwise enjoy under the Vienna Convention or the FSIA.** Indeed any contrary construction would frustrate the statutory objective of ensuring that judgments rendered against terrorist states based upon terrorist acts 'are to be enforced.'

Id. (emphasis added), citing 148 Cong. Rec. H8728 (Nov. 13, 2002) (conference report; see also 148 Cong. Rec. S11525 (Nov. 19, 2002) (remarks of Sen. Harkin) ("Title II operates to strip a terrorist state of its immunity from execution or attachment in aid of execution.").

The Southern District of New York also analyzed the relationship between the TRIA and FSIA in Weininger, supra. In analyzing whether the FSIA exemption for execution of central bank property continued after the passage of the TRIA when executing against a terrorist party, the Court held:

>Section 1611(b) in turn states that a foreign central bank's property is immune "[n]otwithstanding the provisions of 1610." Notably, § 1611(b) lists certain exceptions to this immunity-such as waiver-that are found in § 1610(a), but it does not list exceptions based on terrorism. Plaintiffs argue that § 1611(b) presents no impediment to execution because TRIA § 201(a)'s provisions apply 'notwithstanding any other provisions of law.' TRIA § 201(a), codified at §1610. As previously noted, the intent of the 'notwithstanding' language in TRIA is "to target statutory

exceptions to immunity," and "to the extent that a foreign country's sovereign immunity potential conflicts with Section 201(a), the 'notwithstanding' phrase removes the potential conflict." Accordingly, TRIA, which was enacted later in time than § 1611, overrides the immunity conferred in § 1611.

Id. at 498-499 (emphasis added) (internal citations omitted).

In this action, Petitioner seeks to attach **blocked assets** of Sudan pursuant to the TRIA. Accordingly, the funds held in the name of the Central Bank of Sudan are subject to attachment and execution.

Deposit accounts held in the name of the Bank of Sudan:

| Respondent Bank | Name of Account Holder | Account Number | Amount Held In Account |
|---|---|---|---|
| New York Federal Reserve Bank | Bank of Sudan | N/A | $2,115,471.11 |
| American Express | Bank of Sudan | B031990006 | $ 201,449.50 |
| Citibank | Bank of Sudan | 10936777 | $ 162,198.20 |
| American Express | Bank of Sudan | B980070006 | $ 110,360.66 |
| TOTAL | | | $2,589,479.47 |

Wire accounts held in the name of Bank of Sudan:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Chase | Bank of Sudan | 395507138 | $ 401,112.46 |
| Citibank | National Bank of Abu Dhabi / Bank of Sudan is beneficiary | 395507707 | $ 201,085.12 |
| Deutsche | Bank of Sudan | 4853545 | $ 133,384.71 |
| TOTAL | | | $ 735,582.29 |

### iii. Bank of Khartoum

The Bank of Khartoum is an agency and instrumentality of the Sudanese Government. The Bank of Khartoum was acquired by the Sudanese Government in 1970 and has been recognized as being owned and controlled by the government of Sudan. See Exhibit "H." Executive Order 13067 entered by President Clinton specifically defines the Bank of Khartoum as being "owned or controlled by the Government of Sudan." See Exhibit "E." Additionally, The Bank of Khartoum remains on the list of Specially Designated Nationals of Sudan published by the OFAC. See Exhibit "F."

Significantly, despite being notified of these proceedings, the Bank of Khartoum has not objected to the turnover of these accounts. Based upon the analysis in Weininger, supra, a default should be entered against the Bank of Khartoum and the following described funds should be turned over forthwith.

Deposit accounts held in the name of the Bank of Khartoum:

| Respondent Bank | Name of Account Holder | Account Number | Amount Held In Account |
|---|---|---|---|
| Deutsche Bank | Bank of Khartoum | 00004092272 | $1,812,069.00 |
| Chase | Bank of Khartoum | 395507413 | $1,065,291.33 |
| Bank of New York | Bank of Khartoum | 2345678400 | $ 544,639.64 |
| Citibank | Bank of Khartoum | 36072081 | $ 336,258.30 |
| American Express | Bank of Khartoum | B980070004 | $ 210,615.46 |
| American Express | Bank of Khartoum | B031990005 | $ 100,191.04 |
| TOTAL | | | $4,069,064.77 |

Wire accounts held in the name of Bank of Khartoum:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Chase | Bank of Khartoum | 395911958 | $ 340,422.41 |
| Chase | Bank of Khartoum | 395907411 | $ 143,882.81 |
| American Express | Bank of Khartoum | B042370002 | $ 117,090.62 |
| Deutsche | Bank of Khartoum | 4853633 | $ 105,618.44 |
| Chase | Bank of Khartoum | 395507596 | $ 96,006.18 |
| Deutsche | Bank of Khartoum | 4853561 | $ 78,163.59 |
| Chase | Bank of Khartoum | 395910919 | $ 59,358.66 |
| Chase | Bank of Khartoum | 395507847 | $ 50,251.16 |
| TOTAL | | | $ 990,793.87 |

iv.  El Nilein Bank

El Nilein Bank, or El Nilein Industrial Development Bank, is an agency and instrumentality of Sudan. Executive Order 13067 entered by President Clinton specifically defines El Nilein Bank as being "owned or controlled by the Government of Sudan." See Exhibit "E." Additionally, El Nilein Bank remains on the list of Specially Designated Nationals of Sudan. See Exhibit "F."

Significantly, the Sudan Tribune recognizes that El Nilein Bank is a "government owned" entity. See Exhibit "I." Finally, despite being notified of these proceedings, El Nilein Bank has not objected to the turnover of these accounts. Based upon the analysis in Weininger, supra, a default should be entered against El Nilein Bank and the following described funds should be turned over forthwith.

Deposit accounts held in the name of the El Nilein Bank:

| Respondent Bank | Name of Account Holder | Account Number | Amount Held In Account |
|---|---|---|---|
| Bank of New York | El Nilein Bank – Khartoum | 2345838400 | $ 310,257.21 |
| Chase | El Nilein Bank | 395507391 | $ 97,744.36 |
| TOTAL | | | $ 408,001.57 |

Wire accounts held in the name of El Nilein Bank:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Citibank | Sudan Global Blocked / El Nilein | 36123248 | $ 400,000.00 |
| Citibank | Sudan Global Blocked / El Nilein | 36123248 | $ 218,690.00 |
| Citibank | Sudan Global / El Nilien | 36123248 | $ 190,000.00 |
| Deutsche | El Nilein | 4854441 | $ 124,042.80 |
| Deutsche | El Nilein | 4853529 | $ 95,815.97 |
| Deutsche | El Nilein | 4854783 | $ 91,763.06 |
| American Express | El Nilein | B070530001 | $ 90,930.88 |
| Deutsche | El Nilein | 4853510 | $ 76,655.07 |
| Chase | El Nilein | 395508444 | $ 55,323.27 |
| Chase | El Nilein | 395507456 | $ 54,544.00 |
| TOTAL | | | $ 1,397,765.05 |

v. **Farmers Commercial Bank**

Farmers Commercial Bank, formerly known as Farmers Bank for Investment and Rural Development, is an agency and instrumentality of Sudan. Executive Order 13067 entered by

President Clinton specifically defines Farmers Commercial Bank, as being "owned or controlled by the Government of Sudan." See Exhibit "E." Additionally, Farmers Commercial Bank remains on the list of Specially Designated Nationals of Sudan. See Exhibit "F."

Significantly, despite being notified of these proceedings, Farmers Commercial Bank has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against Farmers Commercial Bank and the described funds should be turned over forthwith.

Deposit account held in the name of Farmers Commercial Bank:

| Respondent Bank | Name of Account Holder | Account Number | Amount Held In Account |
|---|---|---|---|
| Deutsche Bank | Farmers Commercial Bank | 00004030872 | $ 79,173.14 |

### vi. Islamic Cooperative Development Bank

The Islamic Cooperative Development Bank ("ISCOB") is an agency and instrumentality of Sudan. Executive Order 13067 entered by President Clinton defines the Islamic Cooperative Development Bank as being "owned or controlled by the Government of Sudan." See Exhibit "E." Additionally, The Islamic Cooperative Development Bank remains on the list of Specially Designated Nationals of Sudan. See Exhibit "F."

ISCOB is also classified as being government owned. See Exhibit "J." Additionally, despite being notified of these proceedings, ISCOB has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against ISCOB and the following described funds should be turned over forthwith.

Deposit account in the name of the Islamic Cooperative Development Bank:

| Respondent Bank | Account Name | Account Number | Amount Held in Account |
|---|---|---|---|
| Citibank | Islamic Cooperative Development Bank | 36016733 | $ 57,563.98 |

### vii.  Giad Automotive

Giad Automotive Industry, Inc. is an agency or instrumentality of Sudan. According to a report by the Genocide Intervention Network, Giad qualified for inclusion on the OFAC Specially Designated Nationals List "based upon the fact that they are controlled by the Government of Sudan." The report also indicates that Giad was involved in manufacturing trucks for military use by Sudan in ongoing terrorist activities. See Exhibit "K."

Additionally, despite being notified of these proceedings, Giad Automotive Industry has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against Giad and the following described funds should be turned over forthwith.

Wire account identified in the name of Giad Automotive Industry, Inc.:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Citibank | Sudan Global Blocked / Giad Automotive | 36123248 | $ 399,985.00 |

### viii.  Sudanese Free Zone and Market Co.

The Sudanese Free Zone and Market Company ("SFZMC") is an agency and instrumentality of Sudan. The SFZMC was established in 1993 by the Sudanese government through the Sudanese Free Zones and Markets Company Act "to adopt, enhance and implement the Free Zones concept in Sudan . . . ." The SFZMC carries out the Sudanese government's free

zone economic policies pursuant to the Free Zones Act of 1994. See Exhibit "L." This company is specifically identified on the list of Specially Designated Nationals of Sudan published by OFAC. See Exhibit "F."

Despite being notified of these proceedings, the SFZMC has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against SFZMC and the following described funds should be turned over forthwith.

Wire accounts identified in the name of Sudanese Free Zone and Market Company:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
| --- | --- | --- | --- |
| Deutsche | Sudanese Free Zone and Market Co. | 4854265 | $ 245,505.83 |

    ix.    Sudan Airways

Sudan Airways is an agency and instrumentality of Sudan. Executive Order 13067 entered by President Clinton defines Sudan Airways as being "owned or controlled by the Government of Sudan." See Exhibit "E." This entity is also listed on the Specially Designated Nationals List published by OFAC. See Exhibit "F." Additionally, the Embassy of the Republic of Sudan website admits that Sudan Airways is a government owned company. See Exhibit "M."

Finally, despite being notified of these proceedings, Sudan Airways has not objected to the turnover of these accounts. Based upon the analysis in Weininger, supra, a default should be entered against Sudan Airways and the following described funds should be turned over forthwith.

Wire accounts held in the name of Sudan Airways:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Deutsche | Sudan Airways | 4854740 | $ 216,742.31 |
| Bank of New York | Sudan Airways | 2354828400 | $ 209,499.81 |
| Deutsche | Sudan Airways | 4854329 | $ 167,403.31 |
| TOTAL | | | $ 593,645.43 |

    x.    **Sudan Shipping**

Sudan Shipping is an agency or instrumentality of Sudan. As stated on the Embassy of the Republic of Sudan Website, Sudan Shipping was established in 1959 and is the national sea carrier. The Government of Sudan has fully owned Sudan Shipping since January 1967. See Exhibit "M."

Additionally, despite being notified of these proceedings, Sudan Shipping has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against Sudan Shipping and the described funds should be turned over forthwith.

Wire account identified in the name of Sudan Shipping:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Deutsche | Sudan Shipping | 4854492 | $ 74,451.38 |

    xi.    **Sudanese Petroleum Corporation**

The Sudanese Petroleum Corporation is an agency or instrumentality of Sudan. The Sudanese Petroleum Corporation is part of the Sudanese Ministry of Energy and Mining a

division of the government of Sudan. See Exhibit "N." This entity is also listed on the Specially Designated Nationals List published by OFAC. See Exhibit "F."

Despite being notified of these proceedings, Sudan Shipping has not objected to the turnover of this account. Based upon the analysis in Weininger, supra, a default should be entered against Sudanese Petroleum and the described funds should be turned over forthwith.

Wire account held in the name of Sudan Petroleum:

| Respondent Bank | Account Name | Account Number | Amount of EFT |
|---|---|---|---|
| Deutsche | Sudanese Petroleum | 4854652 | $ 54,746.10 |

    d.    **New York's UCC Provisions do not Bar the Petitioner from Attaching Sudanese Assets Held by Intermediary Banks**

In addition to deposit accounts, several wire transfer accounts, some of which are held by intermediary banks, have been attached by Petitioner to satisfy his judgment against Sudan. The Respondents may assert that New York's UCC provisions bar the attachment of these Sudanese assets being held by the intermediary banks. However, New York's UCC provision do not bar Petitioner from attaching the wire transfer accounts held by intermediary banks.

In Navalmar (U.K.), Ltd. v. Welspun Gujarat Stahl Rohren, Ltd, 485 F.Supp.2d 399 (S.D.N.Y. 2007), this Court previously considered and rejected a similar UCC argument in the context of maritime attachment. In Navalmar, a vessel owner brought an action against a chartering company to attach and recover a foreign arbitration award. The vessel owner served a writ of garnishment upon an intermediary bank to an electronic funds transfer ("EFT"). The defendant argued that the funds were not subject to execution because under New York's UCC provisions an "EFT in the hands of an intermediary bank is not a 'property interest' that the

beneficiary's creditor can reach." Id. at 408, citing N.Y.U.C.C. § 4-A-502. This Court rejected the argument and stated:

> [T]he traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.

Id. at 407, citing Aqua Stoli v. Gardner Smith Pty Ltd., 384 F.Supp.2d 726 (S.D.N.Y. 2005). The Court held that "[t]he federal interest in maintaining the 'proper harmony and uniformity' of maritime law must prevail, and any contradictory interest of New York law should not be followed." Id. at 408.

The policy rational underlying this Court's holding in Navalmar is equally applicable to the circumstances of the TRIA attachments in the instant case. The legislative policy behind the TRIA is to "deal comprehensively with the problem of enforcement of judgments rendered on behalf of victims of terrorism in any court of competent jurisdiction by enabling them to satisfy such judgments through the attachment of blocked assets of terrorist parties." Hill v. Republic of Iraq, 2003 WL 21057173 (D.D.C. 2003), citing 148 Cong. Rec. H8728 (Nov. 13, 2002). Similar to maritime attachment, to require a TRIA judgment creditor to scour the globe to attach a debtor's assets, although they are readily available through execution on an intermediary bank, would be contrary to the purposes of the TRIA. As in Navalmar, this Court should hold that it must maintain the proper harmony and uniformity of TRIA judgment enforcement and reject any contrary interest of New York law.

Accordingly, if the issue is raised by the Respondents, this Court should follow Navalmar and hold that New York's UCC provisions do not preclude the attachment of the Sudanese assets held by intermediary banks.

## CONCLUSION

The Petitioner has satisfied all procedural requirements for the turnover of the funds listed above. The Petitioner has provided the Respondents with notice of this hearing; received no objection from the government of Sudan or any potential claimants to the turnover of these funds; and submitted competent evidence to confirm the status of these companies as agencies and instrumentalities of the government of Sudan. Pursuant to the TRIA, these funds are subject to execution to satisfy the outstanding judgment.

WHEREFORE, the Petitioner respectfully requests this Court enter an Order directing the Clerk to turn over to Petitioner the funds identified in this motion to the extent necessary to satisfy this judgment.

Dated: December 10, 2008

Respectfully submitted,

HALL, LAMB AND HALL, P.A.
*Attorney for Petitioner*
2665 South Bayshore Drive
Penthouse One
Miami, Florida 33133
Telephone:   (305) 374-5030
Facsimile:   (305) 374-5033
Email: andyhall@hlhlawfirm.com

By: _____
ANDREW C. HALL
F.B.N. 111480

TO:   Republic of Sudan (By certified mail, return receipt requested)
c/o Embassy of the Republic of Sudan
2210 Massachusetts Avenue
Washington, DC 20008

Republic of Sudan (By certified mail, return receipt requested)
c/o UN Mission of the Republic of Sudan
305 East 47th Street, 4th Floor
New York, NY 100017

Gregory N. Stillman and Carl D. Gray (By certified mail, return receipt requested)
Hunton & Williams LLP
500 East Main Street, Suite 1000
Norfolk, Virginia 23510
*Attorneys for the Republic of Sudan*

David Jones (By certified mail, return receipt requested)
AUSA-SDNY
86 Chambers Street
Third Floor
New York, New York 10007
*Attorneys for OFAC*

The following via CM/ECF Electronic Filing System:

Barry Jay Glickman bglickman@zeklaw.com

Sharon L. Schneier sharonschneier@dwt.com

Mark Putnam Gimbel mgimbel@cov.com, courtclerksny@cov.com

Shari Debra Leventhal Shari.Leventhal@ny.frb.org,

Kristin.sturm@ny.frb.org, stephanie.ruiz@ny.frb.org

Paul Kenneth Stecker PStecker@phillipslytle.com

Michael J. Bauer mbauer@llf-law.com

Howard B. Levi hlevi@llf-law.com

Christina Bost-Seaton christina.bost-seaton@troutmansanders.com

Danielle Sandra Friedberg dfriedberg@mosessinger.com