

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

_____

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

December 15, 2008

BY ECF, FAX AND HAND DELIVERY

Hon. Alvin K. Hellerstein
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

          Re:     <u>Rux v. ABN-AMRO, et al.</u>, 08 Civ. 6588 (AKH)

Dear Judge Hellerstein:

       I write respectfully on behalf of the United States to request that the Court schedule a conference at which the United States and other parties may be heard in response to "Petitioner's Motion for Immediate Turnover of Funds" (the "Immediate Turnover Motion"), dated December 10, 2008. As noted in the Statement of Interest of the United States filed on November 21, 2008 (copy enclosed), this case raises significant issues concerning the proper application of the Terrorism Risk Insurance Act ("TRIA"), Pub. L. No. 107-297, Title II, § 201 (Nov. 26, 2002), codified at 28 U.S.C. § 1610 note, against the backdrop of the economic sanctions in place against Sudan. These issues have potentially major significance with respect to the effectiveness of those sanctions, and, more broadly, the President's sanctions powers and the United States' conduct of foreign policy. As set forth below, the Immediate Turnover Motion warrants further attention in at least two respects: (1) the motion appears unsupported by affirmative evidence that all of the funds identified are "property of" of the Government of Sudan or its agencies and instrumentalities, as required for application of TRIA; and (2) the motion also presents a novel question as to whether a bar on collection of wire transfers held by intermediary banks applies, or is negated by TRIA. In light of these concerns, the Court should not grant petitioners the relief sought until the Government and other parties have an opportunity to be heard.

       At the outset, we underscore that the United States recognizes that petitioners are the victims of a heinous terrorist attack, and the United States has the deepest sympathy for the suffering experienced by petitioners. The United States acknowledges petitioners' right to collect on their judgment. The United States does not object to the immediate release of funds from accounts that satisfy the requirements of TRIA and state law (applicable pursuant to Rule 69) upon a final Court determination based on an appropriate factual showing, and once any appeals have been concluded.

Hon. Alvin K. Hellerstein
December 15, 2008
Page 2

A.    Fact Issues Remain Concerning Ownership of Assets at Issue

As noted in our Statement of Interest, TRIA applies only to property "of that terrorist party", *i.e.*, the Government of Sudan or its agencies or instrumentalities. *See* Statement of Interest at 9-10.  Moreover, because of the breadth of the Sudanese Sanctions Regulations ("SSR"), the mere fact that property has been blocked pursuant to the SSR – even in the absence of any claimant's objection – does not, without more, establish it as property of the Government of Sudan for purposes of attachability under TRIA.  Nor does it establish that petitioners are entitled to the assets under Rule 69 of the Federal Rules of Civil Procedure.[1]  *See id.* at 5-6, 11. As to funds held in deposit accounts, petitioners may not have presented evidence sufficient to establish Sudanese ownership.  Further, a large portion of the blocked assets appear to be frozen wire transfers held by intermediary banks, and there is significant question whether such funds are "of that terrorist party," *i.e.*, Sudan.  *See* Statement of Interest at 9-10.[2]  While petitioners cite *Weininger v. Castro*, 462 F. Supp. 2d 457 (S.D.N.Y. 2006), as support for their position that the Government of Sudan owns the accounts, *see* Immediate Turnover Motion at 6, in fact the passage they quote from *Weininger* on its face addresses "whether these entities are agencies or instrumentalities" of Cuba.  *Id.* (citing *Weininger*, 462 F. Supp. 2d at 495).  Whether an entity is an agency or instrumentality of a government, however, is a very different question from the question presented here, namely, whether the government in question, that of Sudan, owns the assets at issue.  Nor did *Weininger* involve wire transfers that were frozen and held by intermediary banks, a context that obviously presents much greater uncertainty with respect to the question of ownership; rather, the accounts at issue were "deposit debts owed to 'agencies or instrumentalities' of the Republic of Cuba."  *Weininger*, 462 F. Supp. 2d at 464.  In fact, *Weininger* notes that the plaintiff had originally "sought turnover from certain accounts . . . listing Banco Nacional de Cuba as 'owner,'" but that because the bank indicated that "material issues of fact exist as to whether these accounts are owned by Banco Nacional de Cuba," plaintiffs "no longer [sought] turnover from those accounts."  *Id.* at 463 n.3.

B.    Parties May Wish to Be Heard on the Issue of TRIA's Effect on New York Law's
      Requirements for Enforcement of Judgments

The status of the frozen wire transfers held by intermediary banks is further complicated by restrictions on the enforcement of judgments against funds held by intermediary banks in wire transfers.  *See* Immediate Turnover Motion at 22-23.  As petitioners appear to acknowledge, New York law applies to attachment proceedings pursuant to Rule 69 of the Federal Rules of Civil Procedure.  *See id.* at 5 (citing *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*,

---

[1]  New York law requires the creditor to make certain affirmative showings regarding the debtor's actual interest in the specific property sought to be executed upon.  *See* Immediate Turnover Motion at 5 (citing *United Int'l Holdings, Inc. v. The Wharf (Holdings) Ltd.*, 988 F. Supp. 367 (S.D.N.Y. 1997), and CPLR § 5225(b)).

[2]  The requirement that funds subject to attachment be "of that terrorist party" applies to all funds at issue, not just wire transfers held by intermediary banks, and any release of funds would only be appropriate upon a factual determination of Sudanese ownership.

Hon. Alvin K. Hellerstein
December 15, 2008
Page 3

988 F. Supp. 367 (S.D.N.Y. 1997), and CPLR § 5225(b)).  As noted above, New York law requires the creditor to make certain affirmative showings regarding the debtor's actual interest in the specific property sought to be executed upon.  *See id.*  New York law also restricts the enforcement of judgments against funds held by intermediary banks in wire transfers.  *See, e.g.,* N.Y.U.C.C. § 4-A-502.  Notwithstanding their concession that New York law applies, petitioners urge this Court to "reject any [provision] of New York law" to the extent that it prohibits turnover of the funds at issue pursuant to TRIA.  *See id.* at 23.  As set forth in our Statement of Interest, however, TRIA merely lifts the veil of sovereign immunity conferred upon the assets under the Foreign Sovereign Immunities Act, as well as the otherwise applicable prohibitions on attachment and execution set forth in the Sudanese Sanctions Regulations.  Under this Circuit's jurisprudence and Rule 69 of the Federal Rules of Civil Procedure, state law governs the attachability of assets that are not immune from execution under the Foreign Sovereign Immunities Act.  *See* Statement of Interest at 10-11.

Accordingly, the United States respectfully requests that the Court schedule a hearing or conference prior to taking action on the Immediate Turnover Motion, as contemplated by the Court's prior scheduling order.  This submission is merely intended to identify certain issues that remain outstanding, and to request a conference or other opportunity to be heard before the Court takes action on the Immediate Turnover Motion; the United States may wish to make a further, more thorough submission in response to that motion, and, possibly, with respect to other aspects of this matter.

Thank you for your consideration.

Respectfully,

LEV L. DASSIN
Acting United States Attorney


By:    /s/ John Clopper
        DAVID S. JONES
        JOHN D. CLOPPER
        Assistant United States Attorneys
        Tel.: (212) 637-2739/2716
        Fax: (212) 637-2702

Encl. (by hand only)
cc (by email w/o encl.): Counsel on attached service list