Sharon L. Schneier
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, New York 10019
Telephone: (212) 489-8230

*Attorneys for Respondent Citibank N.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x

| | |
|---|---|
| OLIVIA RUX, et al., | |
| Petitioners, | Case No. 08 Civ. 6588 (AKH) |
| - against - | (Eastern District of Virginia No. 04-CV-00428 RGD) |
| ABN-AMRO BANK, N.V. et al., | |
| Respondents. | |

----------------------------------------------------------x

## DECLARATION OF SHARON L. SCHNEIER IN SUPPORT OF CITIBANK, N.A.'S MOTION FOR AN AWARD OF FEES AND COSTS

SHARON L. SCHNEIER, under penalty of perjury and pursuant to 28 U.S.C. § 1746, declares as follows:

1. I am a member of the law firm of Davis Wright Tremaine LLP, counsel for respondent Citibank, N.A. ("Citi") in the above-captioned proceedings. I respectfully submit this Declaration in accordance with this Court's July 29, 2008 Order and ruling delivered at the hearing on February 19, 2009 (the "February 19 Hearing"), and in support of the Bank Respondents' Joint Motion for an Award of Attorneys' Fees and Costs, dated March 9, 2009.

2. Citi, as well as the other Bank Respondents, incurred substantial attorneys' fees and costs in these proceedings, including those incurred in complying with the Court's direction to notify potential claimants to the accounts at issue. At the February 19 Hearing, the Court

ruled that all of the Bank Respondents were entitled to recover their reasonable attorneys' fees and costs. The Court further ruled that such fees and costs would be deducted from the 33 accounts that have been awarded to Petitioners in satisfaction of the Judgment (the "Uncontested Accounts"). A copy of the transcript of the February 19 Hearing is annexed hereto as Exhibit 1.

3. As directed by the Court at the February 19 Hearing, this Declaration details the fees and expenses necessarily incurred in connection with Citi's role in this proceeding, and is consistent with the application for fees and expenses contemplated by the parties' proposed order, filed herewith.

4. The background of these proceedings and the Court's various rulings and directives to the Petitioners and Respondents have been detailing in various filings and proceedings, and are only briefly summarized herein.

### The Judgment

5. Petitioners filed a lawsuit on July 16, 2004 in the Eastern District of Virginia to seek compensation from the Government of Sudan for the deaths of relatives has who were killed in the bombing of the U.S.S. Cole in Yemen. (*See* Petition, ¶ 14.) On July 25, 2007, the United States District Court for the Eastern District of Virginia awarded Petitioners a judgment in the amount of $12,275,860 (including prejudgment interest) plus post-judgment interest at the applicable federal rate. (*See id.*, ¶ 15.) The judgment was registered with this Court on or about November 20, 2007.

### Petitioners Commence Supplemental Proceedings

6. On or about April 21, 2008, Petitioners commenced a supplemental proceeding in this Court under the Terrorism Risk Insurance Act of 2002 ("TRIA"), Federal Rule of Civil Procedure 69(a) and Sections 5225(b) and 5227 of the New York Civil Practice Law and Rules

("CPLR"), seeking to execute the judgment against certain blocked assets held in accounts at Citi and other financial institutions in New York. The Petitioners sought entry of an order directing Respondents to turnover the funds alleged to be held by the financial institutions in various accounts identified in Exhibits E-1 through E-8 to the Petition to the extent necessary to satisfy their judgment.

7. Petitioners served Citi with an Information Subpoena dated February 21, 2008 which Citi responded to on March 6, 2008 and on December 23, 2008. In addition, on July 10, 2008, Citi provided Petitioners with document discovery in accordance with the Court's June 26, 2008 Order.

Role of the Respondent Banks

8. At a preliminary hearing held on May 28, 2008 (the "May 28 Hearing"), the Court addressed the need for cooperation and collaboration amongst the parties. A copy of the transcript of the May 28 Hearing is annexed hereto as Exhibit 2. Specifically, the Court determined that it was in the best interests of Petitioners, the Bank Respondents and any potential third-party claimants to the frozen accounts, that a set of uniform procedures be established to govern discovery, notice to potential claimants, the form/content of any objections and how such objections would be recorded and communicated to the Court, as well as other procedural matters. *See, e.g.*, Exh. 2, 18:19-19:3 (notice, interpleader); 20:1-2, 15-16 (discovery). Counsel for the Respondent Banks were directed to work together to develop proposed procedures to be used by the Respondent Banks in this proceeding, which were subject to the approval and oversight of the Court. *See, e.g., id.*, 20:22-25 ("[All parties] should discuss amongst themselves the appropriate procedures."). The Court also established a reporting date by which the parties

were required to submit a proposed plan for providing notice for interested parties, and other matters, to the Court. *Id.*, 21:2-12.

9. Throughout these proceedings, counsel for the various Bank Respondents have worked together cooperatively and efficiently, in frequent consultation with the Court, counsel for Petitioners, and the Government, to develop and implement procedures necessary to serve the interests of all parties. Indeed, and notwithstanding the fact that each of the banks had different amounts/types of funds held pursuant to the Sudanese Sanctions Regulations and, at times, different concerns, counsel worked together to streamline our dealings with Petitioners' counsel and to ensure that these proceedings moved forward efficiently and expeditiously.

The Banks Are Ordered To Transfer Certain Funds to the Court Registry

10. On July 29, 2008 (the "July Order") the Court entered an Order which, as modified on August 5, 2008, required Respondents to transfer to the Registry of the Court for the Southern District of New York's Court's Registry Investment System (the "Court Registry") blocked deposit accounts (the "Blocked Deposit Accounts") and blocked wire transfers ("Blocked Wire Transfer Accounts") with a value equal to or exceeding $50,000 by August 25, 2008. (Doc. No. 2, ¶ 1; Doc. No. 8, ¶ 1.) On or about August 25, 2008, and in accordance with the Court's order, Citi transferred approximately $2,041,021.00 to the Court. The Court's July 29 Order also expressly provides that "costs of effecting notice shall be taxed against the ultimate disbursement of the accounts." (*See* July Order, ¶ 5.) A copy of the July Order is annexed hereto as Exhibit 3.

Notice to Potential Claimants

11. On September 9, 2008 (the "September Order"), the Court entered an Order which, as amended by subsequent orders, established the form, parties to be given notice and

DWT 12538704v3 0067486-000010

various methods by which the parties were to be given notice of these proceedings. (Doc. No. 32, ¶¶ 1-8.). As set forth in the Affidavit of Service, Citi served the entities with documents required by, and in accordance with, the Court's September Order.[1] (Doc. No. 40.)

12.   In the September Order, as modified Oct. 29, 2008, the Court also ordered that notice of these proceedings be given by publication. (Doc. Nos. 32, ¶ 5; 61.) Notice, in the form approved by the Court on Oct. 17, 2008 (doc. no. 54), was published in *The International Tribune* and as a banner ad on www.allafrica.com, with links to the Notice in Arabic and English. (Doc. No. 164.) Each of the Bank Respondents was responsible for a portion of the costs associated with the publication of the notice and Citi has paid its portion of those costs.

13.   The July Order, as subsequently amended, also provided for a 60-day period for potential claimants to submit written objections and assert claims to the blocked assets, provided in the July Order. During this period, which expired on November 21, 2008, counsel for Citi responded to claimants with potential objections and/or queries.

### Petitioners Seek Turnover of Funds to Satisfy the Judgment

14.   On December 10, 2008, Petitioners filed a Motion for Immediate Turnover of Funds (the "Motion") seeking turnover from the Court Registry of certain accounts that had been deposited in the Court Registry. Citi prepared a memorandum of law in response to Petitioners' Motion, which was filed on January 9, 2009 with its accompanying affidavit and exhibits. (Doc. Nos. 173; 174.) After receiving Citi's responsive pleading and those of the other Bank Respondents, Petitioners indicated that they no longer sought turnover of a number of accounts initially identified in the Motion.

---

[1]   The Petition identified several deposit accounts that listed the Bank of Khartoum, Bank of Sudan or El Nilein Bank. Notice was given to these entities by the Bank Respondents on numerous occasions. (*See, e.g.*, Affidavits of Service to Bank of Khartoum, filed as ECF Doc. Nos. 30, 31, 40, 43, 44, 47, 55, 75, 79, 82, 83, 86, 92, 94, and 161.)

### The Court Orders Turnover of Certain Accounts and Payment of Reasonable Fees and Costs

15. On February 19, 2009, the Court heard oral argument on Petitioners' Motion. At oral argument, the Court found that Petitioners had demonstrated their entitlement to proceeds of certain accounts for which no objection had been received – the Uncontested Accounts – and that there were sufficient funds in those accounts to satisfy the judgment. The Court found that the Bank Respondents had provided sufficient notice to all interested parties to comport with the requirements of due process and applicable state and federal law and, with respect to the Uncontested Accounts, should be discharged from liability as to all future claims.

16. The Court ordered the parties to prepare a proposed joint order(s) to address the turnover of the proceeds of the Uncontested Accounts to the Petitioners, discharge of the Respondent Banks from any liability with respect to the Uncontested Accounts, and reimbursement of the Bank Respondents' reasonable attorneys' fees and costs. Proposed joint orders are being submitted by the parties.

17. The Uncontested Accounts contained a total of $14,807,085.60 as of the date of their transfer to the Court's Registry, an amount which is more than sufficient to (i) satisfy the Judgment and all interest accrued thereon through April 1, 2009 ($13,395,378.64); and (ii) reimburse the reasonable attorneys' fees and costs of the Bank Respondents, which total $621,247.22, as evidenced in the supporting declarations and affidavits submitted by each Bank Respondent.

18. Citi's application for reimbursement of its attorneys' fees of $79,201.56 and expenses of $10,204.99 are further detailed *infra* at ¶¶ 19-28 and Exhibits 4 and 5 hereto.

**Request for Reimbursement of Attorneys' Fees and Costs**

19. Consistent with the Bank Respondents' understanding of this Court's July 29 Order, the proposed Joint Order, and the prior proceedings in this case, Citi seeks reimbursement only for that work performed and those expenses incurred *after* the July 29 Order and where such fees and expenses were incurred in performing services in the following categories: (1) legal research with respect to issues concerning multiple claimants, (2) coordination/communications with Bank Respondents' counsel, (3) drafting court orders, providing notice to potential claimants and related documents and service of same, (4) communicating with, responding to, potential claimants, (5) preparing and filing certificates of service, (6) reviewing answers to third-party petitions and various other pleadings, (7) responding to Petitioners' Motion for Immediate Turnover of Funds, including legal research in connection with the preparation of responsive papers, and related court appearances, and (8) legal work in connection with the payment of funds into the Registry of the Court. In performing these tasks/functions, we necessarily consulted with and provided direction to internal Citi counsel.

20. Citi seeks an award of attorneys' fees of $79,201.56 and reimbursement of $10,204.99 in expenses. These fees and expenses are reasonable and were necessarily incurred in connection with Citi's role in these proceedings.

21. Exhibit 4 is a detailed billing record indicating the amount of time spent by me, Joanna Summerscales, the associate assigned to this matter, and professional support staff who were involved in this proceeding and the nature of the services performed. Exhibit 4 is derived from Davis Wright Tremaine LLP's billing books and records, which are prepared from contemporaneous time records and other sources of information, and is an accurate record of fees billed to Citi. The original billing records have been modified to remove those time entries that

DWT 12538704v3 0067486-000010

are not the subject of this fee application as well as fields used only for internal purposes. In addition, the "Description" has been edited to redact for privilege and to provide, in certain instances, to clarify the descriptions of work performed.

22. The hourly rates for the partners, associates and professional support staff are those charged by our Firm to Citi in 2008 and 2009 and are shown in the amount actually billed to the client, including applicable attendant discounts and write-downs, with the majority of the work being performed by myself, Joanna Summerscales (a junior associate) and Leslie Majer (a litigation paralegal). The rate charged to Citi in 2008 and 2009 were the same.

23. I am the Partner-in-Charge of Davis Wright Tremaine's New York office and a 1984 graduate of Brooklyn Law School. I regularly handle commercial litigation matters. Representation of Citi forms a significant part of my practice and I have developed familiarity with Citi as a client. In addition to these proceedings, I have represented Citi in a number of other cases brought under the TRIA. My time on this matter was billed at my usual and customary rate for Citi of $525 per hour.

24. Joanna E. Summerscales is a third-year associate and 2006 graduate of Cornell Law School. Joanna has been involved in this case, as well as other TRIA cases since joining the Firm. Prior to joining this Firm, Joanna was a litigation associate at Paul, Weiss, Rifkind, Wharton & Garrison LLP in New York. Joanna's time on this matter was billed at the usual and customary Citi rate for a third-year associate, which is $325 per hour.

25. Leslie Majer is a member of the Firm's professional support staff and has worked as a litigation paralegal at this Firm for more than 25 years. Leslie obtained his B.A. in Anthropology from Boston College. Leslie's time on this matter was billed at his usual and customary Citi rate of $215 per hour.

26. We periodically review prevailing legal rates in the legal community of firms roughly comparable in size and having attorneys of similar experience and standing. I believe the Firms' current hourly rate structure is comparable to or less than the typical hourly rates charged by other medium-size New York City firms practicing in this area of law.

27. The total number of hours committed to this proceeding was 357.4, of which a substantial portion of appropriate tasks was billed by an associate attorney or professional support staff. The total fees sought are $79,201.56. All fees are shown net the applicable client discount and in the amount billed to Citi on the invoice number indicated below the entry. To the best of my knowledge, these fees were necessarily incurred and are of the type typically billed by this Firm and by other firms to clients.

28. Attached hereto as Exhibit 5 is a detailed billing record showing all expenses for which Citi seeks reimbursement. The majority of the expenses were incurred in connection with providing notice to potentially interested parties, and, to a lesser extent, court fees, duplication costs and legal research. All expenses are shown net any applicable client discount and in the amount billed to Citi on the invoice number indicated below the entry. To the best of my knowledge, these expenses were necessarily incurred, are of the type normally billed by the Firm and by other firms to clients and total $10,204.99.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of March 2009
New York, New York

_____
Sharon L. Schneier (SLS 1151)